Maung M. LWIN, 127–60–6414, Lance Corporal (E–3) U.S. Marine Corps Reserve, Petitioner,

v.

M.T. COOPER, Major General, U.S. Marine Corps Commander, 4th Marine Division (Rein) FMF, USMCR, New Orleans, LA,

and

J.R. Spradley, Captain, U.S. Marine Corps Commanding Officer Marine Corps Brig, Camp Lejeune, NC, Respondent.

NMCM No. 911451 M.

U.S. Navy–Marine Corps Court of Military Review.

12 July 1991.

LT P. Van Hartesveldt, JAGC, USNR, Appellate Defense Counsel.

Hillary Richard, Civilian Defense Counsel.

Ronald L. Kuby, Civilian Defense Counsel.

Stephen A. Somerstein, Civilian Defense Counsel.

CAPT John Ladue, USMC, Defense Counsel.

LT Dwight N. Mersereau, JAGC, USNR, Appellate Government Counsel.

LCDR J. Richard Chema, JAGC, USN, Appellate Government Counsel.

FREYER, Judge:

The petitioner, a member of the Selected Marine Corps Reserve, is in the custody of the respondents pursuant to the sentence of a special court-martial imposed upon his conviction for absence without leave and missing movement through design. The offenses arose from the petitioner's apparent refusal to obey orders to report for active duty in connection with the mobilization of forces preparatory to the institution of military operations to expel occupying Iraqi forces from Kuwait.

On 23 August 1990, the Secretary of Defense, acting on the authority of an Executive Order issued pursuant to 10 U.S.C. § 673b, published a memorandum delegating to the Secretaries of the Military Departments and the Chairman of the Joint Chiefs of Staff authority to order Selected Reserve units to active duty within numerical limitations not here relevant. The final paragraph of the memorandum reads: "The Secretaries of the Military Departments shall exercise the authority granted by this memorandum in a manner consist-

ent with the attached guidance." Paragraph c of the attached guidance reads in relevant part:

Effective immediately all screening activity of Selected Reservists to determine their availability for active service ceases. All members of the Selected Reserve shall be considered immediately available for active duty. Selected Reservists ordered to active duty with their unit or as individuals shall report as ordered unless physically unable to do so. .... *After reporting as ordered,* members may be considered for release on humanitarian or other grounds under criteria applicable to active force members generally. .... It is important for the integrity of the entire call-up activity that the criteria for assessing releases be uniform and strictly enforced.

[Emphasis supplied.]

On 24 August 1990, the Assistant Secretary of Defense, Force Management and Personnel, issued a complementary memorandum, which reads in part:

Individuals failing to comply with an order to active duty will be reported as absent without official leave to civilian authorities. Such personnel are subject to the Uniform Code of Military Justice (UCMJ) as of their reporting date, whether or not they have reported to active duty. Violations of the UCMJ by such personnel, including violations of Article 86, UCMJ, will be handled on an individual, case-by-case basis in accordance with existing laws and regulations.

Referencing the above memoranda, the Acting Secretary of the Navy issued a memorandum, dated 15 November 1990, for the Chief of Naval Operations and the Commandant of the Marine Corps authorizing them to order members of the Selected Reserve under their cognizance to active duty. Pursuant thereto, orders were issued on 18 November 1990 by the Commandant of the Marine Corps, Commanding General, 4th Marine Division, and Commanding Officer, Company F, 2d Battalion, 25th Marines, the petitioner's unit, located at the Fort Schuyler Navy & Marine Corps Reserve Center in the Bronx, New York,

the last of which directed the petitioner to report for extended active duty not later than 0600, 24 November 1990. This the petitioner, who, on 9 November 1990, had submitted a conscientious objector status application, allegedly failed to do, even though he had allegedly been advised of his duty to report notwithstanding the pendency of his conscientious objector status application.

We view the 23 August 1990 Secretary of Defense memorandum as a clear mandate to the military departments to cease any screening activity of selected reservists re availability for active duty and to implement call-up procedures requiring selected reservists to report first and have their individual circumstances considered later, so as to ensure that their cases were considered uniformly with those of all others similarly called to active duty. Moreover, we see nothing illegal or *ultra vires* about such a requirement, which clearly and rationally serves the legitimate governmental objectives of achieving desired force levels without undue administrative interference and preserving the integrity of the call-up by eliminating opportunities for preferential treatment at the level of the individual selected reserve unit.

It follows that, even if lower-echelon regulations regarding conscientious objector status application processing were inconsistent with the 23 August 1990 Secretary of Defense memorandum, the latter would take precedence over the former. For the reasons enumerated by the military judge, however, we do not find such an inconsistency. The provision on which the petitioner mainly relies is found in paragraph 6k of Marine Corps Order 1306.16E, dated 21 November 1986, wherein it is written: "A Marine reservist who applies for conscientious objector status will not normally be ordered to involuntary active duty until the application is resolved. Proper resolution of the application is best accomplished within the Reserve unit." Insertion of a word like "normally" should not be allowed to negate an entire rule, and reliance on such a qualification should be limited to

genuinely exceptional situations. In this instance, however, we do no violence to the general rule in concluding that Marine Corps personnel procedures were not operating "normally" when the armed forces were in the midst of a large-scale mobilization in preparation for imminent hostilities, and when the Secretary of Defense had expressly commanded both cessation of local screening and unconditional reporting for active duty as ordered, and had propounded his rationale as to why, in the prevailing environment, applications for release were not best resolved within the reserve unit.

On the basis of the portion of the record[1] before us, we conclude that the petitioner is lawfully in the custody of the respondents. Such conclusion, however, does not extend beyond a determination that the petitioner was lawfully called to active duty and, thus, became subject to the Uniform Code of Military Justice as of 0600, 24 November 1990, and has ever since remained so. Because the case is not presently before us for review pursuant to Article 66 (10 U.S.C. § 866), we express no opinion in regard to any aspect of the findings or sentence (although we invite the attention of reviewing authorities to the amount of the monthly forfeiture recited in the petitioner's brief).

The petition for extraordinary relief in the nature of a writ of habeas corpus is denied.

Senior Judge MITCHELL and Judge HOLDER concur.

---

1. The Government's motion to attach the same    is granted.